```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA


RODERIC SEYMOUR                            CIVIL ACTION

VERSUS                                     NO: 15-3829

BLUECROSS BLUESHIELD OF                    SECTION: "J"(4)
SOUTH CAROLINA
```

## ORDER & REASONS

Before the Court are Cross-Motions for Summary Judgment filed by Plaintiff Roderic Seymour **(Rec. Doc. 28)** and Defendant BlueCross BlueShield of South Carolina (BCBSSC) **(Rec. Doc. 27.)** Defendant also filed a Reply in support of its motion. **(Rec. Doc. 30.)** Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that Defendant's motion should be **GRANTED** and Plaintiff's motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This lawsuit arises from the denial of health benefits pursuant to an employee health benefits plan (the Plan) governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Specifically, Plaintiff was denied benefits under the Plan for an allegedly "investigational or experimental medical treatment." (Rec. Doc. 13-1 at 1.) This action was originally filed in the 32nd Judicial District Court of Terrebonne Parish. (Rec. Doc. 1.) The lawsuit was removed and is

properly before this Court pursuant to 28 U.S.C. § 1331. (Rec. Doc. 1, at 2.)

The following facts are undisputed.[1] Plaintiff was employed by Buffets, Inc. (Buffets). Buffets maintained an employee group health plan which BCBSSC administered on its behalf. On May 28, 2014, Plaintiff's doctor called BCBSSC to request precertification for a total hip replacement due to aseptic necrosis of the femur. BCBSSC pre-certified Plaintiff for the total hip replacement. BCBSSC was later advised that Plaintiff's physician was considering an alternative outpatient procedure. BCBSSC informed Plaintiff's physician that it did not precertify possible treatment and that outpatient treatment did not require precertification. Ultimately, Plaintiff received a core decompression procedure which involves drilling holes into the femur and treating the drilled locations with platelet-rich plasma. Plaintiff submitted a claim for benefits for the procedure. BCBSSC ultimately denied the claim as investigational. BCBSSC's plan administrator determined that the procedure was investigational using an internal medical policy. (Rec. Doc. 24-3 at 29.) Plaintiff appealed the denial and BCBSSC upheld its decision to deny Plaintiff's claim as investigational.

---

[1] Rec. Doc. 27-2; 28-2.

On June 14, 2016, Defendant filed a Motion for Summary Judgment. (Rec. Doc. 13.) On June 30, 2016 this Court issued an Order and Reasons denying the motion in part and granting the motion in part. (Rec. Doc. 16.) The Court granted the motion with respect to Plaintiff's state law claims, finding that they were preempted by ERISA, and denied the motion in all other respects. *Id.* at 11. Thereafter, the Court ordered the parties to submit cross-motions for summary judgment to determine whether Defendant properly denied Plaintiff's benefits under the employee health benefit Plan. (Rec. Doc. 22.) The cross-motions for summary judgment are now before the Court.

**PARTIES' ARGUMENTS**

Plaintiff argues that he was wrongfully denied coverage under the health benefits plan. First, Plaintiff argues that the Plan administrator's interpretation of the Plan was legally incorrect, because BCBSSC was contacted for pre-authorization of the procedure and advised that pre-authorization was not required. (Rec. Doc. 28-1 at 4.) Second, Plaintiff argues that the "Court cannot determine if the interpretation of the policy was legally correct because the [medical policy] used by BCBSSC is not part of its policy." *Id.* at 5. Third, Plaintiff argues that BCBSSC abused its discretion in interpreting the Plan. *Id.* Plaintiff argues that "the Plan was not internally consistent," that the policy violated administrative regulations by failing to identify which procedures

3

are investigational, and that BCBSSC acted in bad faith by failing to determine if the procedure was investigational when he initially sought precertification. *Id.* at 5-6.

Defendant argues that BCBSSC was legally correct in excluding Plaintiff's claim as investigational. (Rec. Doc. 27-1.) Defendant argues that Plaintiff's health benefits Plan excludes coverage for services, supplies, and drugs that are deemed investigational or experimental as defined within the Plan. *Id.* at 8. Further, Defendant argues that the Plan affords BCBSSC the discretion to consider peer-reviewed literature to determine whether a procedure is investigational or experimental. *Id.* at 10. BCBSSC used a "medical policy" that summarizes this peer-reviewed literature and determined that the platelet-rich plasma treatment Plaintiff received is excluded from coverage as investigational. *Id.* Thus, Defendant argues it was legally correct in excluding Plaintiff's claim. Alternatively, Defendant argues that even if it was not legally correct in denying Plaintiff coverage, BCBSSC did not abuse its discretion in denying Plaintiff's coverage. *Id.* at 1.

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R.

Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

As decided in this Court's previous Order, ERISA governs the employee benefits plan at issue. (Rec. Doc. 16.) This Court's review is limited to the factual evidence in the administrative record, considering only the facts known to the Plan administrator at the time the benefits decision was made. *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999) (citing *Wildbur v. Arco Chem. Co.*, 974 F.2d 631, 639 (5th Cir. 1992)). Plaintiff's claim can be characterized as a claim for denial of benefits under Section 502(a)(1)(B) of ERISA. *See id*. That section authorizes a plan participant or beneficiary to file an action to "recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of his Plan." 29

U.S.C. § 1132(a)(1)(B); *Taylor v. Ochsner Found. Clinic Hosp.*, No. 09-4179, 2010 WL 3528624, at *3 (E.D. La. Sept. 3, 2010). BCBSSC has discretion to determine whether a particular surgical or medical procedure is investigational. (Rec. Doc. 16 at 6.) A district court reviews "an administrator's denial of ERISA benefits for abuse of discretion 'if an administrator has discretionary authority with respect to the decision at issue.'" *Taylor*, 2010 WL 3528624, at *3 (citing *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397 (5th Cir.2007)). The burden is upon an ERISA claimant to show that the administrator abused its discretion in denying his claim for health benefits. *Barrois v. Reliance Standard Life Ins. Co.*, No. 14-2343, 2015 WL 4937894, at *10 (E.D. La. Aug. 18, 2015)(citing *George v. Reliance Standard Life Ins. Co.*, 776 F.3d 349, 352 (5th Cir. 2015).

The Fifth Circuit uses a two-step inquiry to determine whether a plan administrator abused its discretion in construing plan terms. *Pylant v. Hartford Life & Accident Ins. Co.*, 497 F.3d 536, 540 (5th Cir. 2007) (citing *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999)). First, the Court must "determine the legally correct interpretation of the plan and whether the administrator's interpretation accords with that interpretation." *Id*. If that construction is legally sound, then no abuse of discretion occurred and the inquiry ends. *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008). In determining

7

whether an administrator's interpretation is legally correct, a court must consider three factors: "(1) whether the administrator has given the Plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the Plan, and (3) any unanticipated costs resulting from different interpretations of the Plan." *Shedrick v. Marriot Int'l, Inc.*, No. 11-0820, 2012 WL 601881, at *8 (E.D. La. Feb. 23, 2012) (citations and internal quotations omitted). A substantial factor in determining whether the administrator's interpretation is legally correct is whether the interpretation is "fair and reasonable." *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 344 (5th Cir. 2002).

Second, if the Court concludes that the administrator has not given the plan the legally correct interpretation, the Court must then determine whether the administrator's interpretation constitutes an abuse of discretion. *Id*. at 640. "A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (citations omitted). In other words, "where 'the Plan administrator acted arbitrarily and capriciously.'" *Meditrust*, 168 F.3d at 214 ("A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the

8

evidence.") A court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." *Id.* (quoting *Corry*, 499 F.3d at 398 (5th Cir. 2007) (internal quotation marks omitted)).

The first step is for the Court to determine whether the Plan administrator's interpretation of the Plan is legally correct. If legally correct, no abuse of discretion occurred and the inquiry ends. *Crowell*, 541 F.3d at 312. The first factor to examine in determining whether an administrator's interpretation was legally correct is whether the administrator has given the Plan a uniform construction. *Shedrick*, 2012 WL 601881, at *8. This factor scrutinizes whether the administrator consistently applied the Plan to similarly situated persons covered under the policy. *Id.* at *9 (citing *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 258 (5th Cir. 2009)). Neither Plaintiff nor Defendant raised arguments in support of or against this factor.[2] Accordingly, the Court will not draw any inferences in favor of either party regarding this factor. *See Shedrick*, 2012 WL 601881, at *10 (not drawing inferences in favor of either party where neither party raised an argument for or against a particular factor).

---

[2] Plaintiff argued that "since the 'Medical Guidelines' was [sic] not referenced in the policy nor were part of the policy" that the plan was not internally consistent. (Rec. Doc. 28-1 at 5.) However, this does not reveal whether the plan administrator consistently applied the Plan to similarly situated persons. See Shedrick, 2012 WL 601881, at *8.

9

The second factor—whether the Plan administrator's interpretation is consistent with a "fair reading of the plan"—is the most important factor in determining whether the administrator's interpretation was legally correct. *Id.* (citing *Stone*, 570 F.3d at 260). With respect to a "fair reading of the Plan," the Fifth Circuit provides that "eligibility for benefits is governed in the first instance by the plain meaning of the plan language." *Id.* "ERISA Plans are interpreted in their ordinary and popular sense as would a person of average intelligence and experience." *Id.* "Thus, plan provisions must be interpreted as they are likely to be understood by the average Plan participant." *Id.* Plaintiff argues that the administrator's interpretation of the Plan was not consistent with a fair reading of the Plan. (Rec. Doc. 28-1 at 4-5). Specifically, Plaintiff argues that "the Court cannot determine if the interpretation of the policy was legally correct because the [medical policy] used by BCBSSC [to render Plaintiff's procedure investigational is] not part of its policy and, therefore, cannot be interpreted in a fair and reasonable manner. . . ." *Id.* at 5. However, Plaintiff does not argue that the platelet-rich plasma treatment is not investigational. *See id.*

Plaintiff's Plan excludes "services or supplies or drugs that are Investigational or Experimental" from coverage. (Rec. Doc. 24

10

at 96.) The Plan defines investigational or experimental as follows:

> **Investigational or Experimental**: surgical procedures or medical procedures, supplies, devices or drugs which, at the time provided, or sought to be provided, are in the judgment of the Corporation not recognized as conforming to generally accepted medical practice, or the procedure, drug or device:
> 1. Has not received required final approval to market from appropriate government bodies; or,
> 2. Is one about which the peer-reviewed medical literature does not permit conclusions concerning its effect on health outcomes; or,
> 3. Is not demonstrated to be as beneficial as established alternatives;
> 4. Has not been demonstrated to be as beneficial as established alternatives; or
> 5. Is one in which the improvement claimed is not demonstrated to be obtainable outside the investigational or experimental setting.

(Rec. Doc. 24 at 65-66.) A plain reading of the Plan shows that the Plan administrator is permitted to consider peer-reviewed medical literature and determine whether such literature is conclusive concerning the procedure's effect on health outcomes. BCBSSC conducted a periodic review of peer-reviewed sources discussing platelet-rich plasma treatments and summarized those conclusions in its Medical Policy. (Rec. Doc. 24-3 at 29.) As a result of its periodic review, BCBSSC determined that "[c]urrent [platelet-rich plasma] trials are mixed. A recent systematic review found that a greater proportion of studies reported no benefit from [platelet-rich plasma] than studies that reported a benefit. Therefore, [platelet-rich plasma] as a primary treatment

11

for acute or chronic wounds, or as an adjunct to surgical procedures, is considered investigational." *Id.* at 34. Plaintiff's Plan excludes a procedure as investigational if that procedure "[i]s one about which the peer-reviewed medical literature does not permit conclusions concerning its effect on health outcomes." (Rec. Doc. 24 at 65-66.) Because the Plan administrator is permitted to review peer-reviewed medical literature, and as a result of such literature found no conclusions on platelet-rich plasma treatments concerning its effect on health outcomes can be determined, the Court finds that denial of Plaintiff's platelet-rich plasma treatment as investigational was a "fair reading of the Plan." This factor weighs in favor of finding that the Plan administrator's interpretation of the Plan was legally correct.

The third factor—whether a claimant's Plan interpretations would result in unanticipated costs to the Plan—was not argued by either party. Therefore, the Court will not draw any inferences in favor of either party regarding this factor. *See Shedrick*, 2012 WL 601881, at *10.

After weighing these three factors, the Court concludes that BCBSSC's interpretation of the Plan to exclude the platelet-rich plasma procedure as investigation was legally correct. Consequently, the plan administrator did not abuse its discretion when it denied Plaintiff's benefits as investigational or experimental.

12

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion for Summary Judgment* **(Rec. Doc. 28)** is **DENIED**.

**IT IS HEREBY ORDERED** that Defendant's *Motion for Summary Judgment* **(Rec. Doc. 27)** is **GRANTED**

New Orleans, Louisiana, this 8th day of September, 2016.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE